UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CONNELLY COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>PRIMO WATER CORP.,<br><br>Defendant. | NO. 2:14-CV-00340-JLQ<br><br>MEMORANDUM OPINION AND ORDER RE: MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendant Primo Water's Motion for Summary Judgment (ECF No. 29). Response and Reply briefing and exhibits have been filed. Defendant is represented by Scott Cifrese and William Schroeder. Plaintiff Connelly Company is represented by Chris Montgomery. The matter was determined without oral argument after submission of the briefs. See Local Rule 7.1(h)(3)(B)(iv)("...the Court may decide that oral argument is not warranted and proceed to determine any motion without oral argument.")

**I. Introduction**

Plaintiff filed this action alleging that Connelly Company, doing business as Lodi Water Company, contracted with Defendant Primo Water to bottle and distribute water under the Primo label in Eastern Washington and Northern Idaho. Plaintiff contends it had a distributor agreement with Primo. (Complaint ¶ 8.1). Plaintiff alleges it understood Lodi was contracting with Primo through another company, H2Oregon. (*Id*. at ¶ 9.1). Lodi contends it started bottling and distributing for Primo on October 1, 2013, and it incurred start up costs to reconfigure its operations to bottle for Primo. Primo then ended its business relationship with Lodi in January, 2014. Plaintiff contends Primo engaged in

ORDER - 1

fraudulent inducement and unfair business practices in violation of the Washington Consumer Protection Act. Plaintiff also alleges breach of contract.

Defendant filed an Answer denying the allegations and asserting a Counterclaim. (ECF No. 3). Defendant denies a contractual relationship with Lodi, contending Primo had a relationship with H2Oregon who then subcontracted with other entities, including Lodi. In support of its Counterclaim, Defendant Primo claims it provided equipment and software to Lodi to facilitate the Sub-Distributor Agreement between H2Oregon and Lodi. Defendant states Plaintiff has refused to return equipment and asserts claims for conversion of the equipment and unjust enrichment.

**II. Factual Background**

In summary judgment proceedings, the facts are viewed in a light most favorable to the non-movant, in this case the Plaintiff, Connelly Company doing business as Lodi Water Company (hereafter "Lodi" or Plaintiff). Defendant Primo is a provider of purified bottled water, water dispensers, and other water products in the United States and Canada. (ECF No. 30, Deft. St. of Facts, ¶ 1)[1]. Until November 2013, Primo's business model involved entering into contracts with entities, known as Regional Operators ("RO") who would manufacture, bottle, and distribute Primo products. (*Id*. at ¶ 2). One such RO is H2Oregon located in the Dalles, Oregon. (*Id*. at ¶ 4). Another RO was Clear Water Springs, of Hayden, Idaho. In mid-2013 Clear Water Springs told Primo it wanted to cease manufacturing and distributing. (*Id.* at ¶ 5-6).

The parties dispute what occurred next. Primo states it approached James Connelly of Connelly Company concerning his becoming a sub-distributor of H2Oregon. Connelly contends he was contacted about becoming a RO for Primo. The parties agree a meeting occurred in August, 2013 with Primo, H2Oregon, and Lodi. Lodi's facility was toured. The parties disagree concerning what was discussed - - Lodi becoming a sub-distributor, or Lodi becoming a RO.

---

[1] Deft's St. of Facts ¶¶ 1-6 are undisputed. See Declaration of James Connelly (ECF No. 38, ¶ 3).

ORDER - 2

James Connelly, on behalf of Lodi, then signed a document entitled "Primo Sub-Distributor Agreement". Ross Rossette signed the agreement on behalf of "Primo RO - H2Oregon Water Company". (See ECF No. 38-1). James Connelly states his understanding was this was a "temporary document" to meet "Primo's immediate need" for bottling and distribution. He states he was "assured by Bob Heer prior to signing that a complete RO Contract would be forthcoming" (ECF No. 38, ¶ 8). At that time, Bob Heer was the Director of Operations for Primo Water's Western Region.

Primo contends it worked directly with H2Oregon, and that Lodi was a sub-distributor. Primo argues Lodi submitted invoices to, and was paid by, H2Oregon. (Deft St. of Facts ¶ 13). Connelly states that invoices were submitted directly to Primo on-line, but Lodi was paid through H2Oregon.

In November, 2013, Primo entered into a Strategic Alliance Agreement with DS Services of America, under which DS Services would provide national bottling and distribution to Primo. Due to this arrangement with DS Services, Primo decided to terminate all its ROs. Primo notified Lodi of the termination and transition via letter dated December 31, 2013. (ECF No. 32-1).

**III. Discussion**

Defendant argues all of Plaintiff's claims should be dismissed because Plaintiff cannot establish those claims, "particularly since it conducted no discovery in this matter." (ECF No. 29, p. 3). Primo argues it did not have a contract with Plaintiff and thus the breach of contract claim and related equitable theories of unjust enrichment, equitable estoppel, detrimental reliance, and *quantum meruit* must fail. Defendant argues the Washington Consumer Protection Act ("WCPA") claim fails because there is no evidence of an unfair or deceptive act, or of an effect on the public interest. Lastly, Defendant argues Plaintiff's fraudulent inducement claim fails because promises of future performance are not representations sufficient to support a fraud claim.

Plaintiff counters that privity of contract is not an element of a WCPA claim. Plaintiff further argues the record contains evidence of misrepresentations which were

ORDER - 3

1 unfair and anticompetitive.  Plaintiff claims the effect on the public interest can be
2 established by the potential for repetition, as Primo had many ROs and sub-distributors.
3 Plaintiff contends questions of fact exist as to the representations made by Primo and its
4 representatives and whether Plaintiff justifiably relied on those representations, which
5 preclude summary judgment on any of Plaintiff's claims. (ECF No. 39, p. 9-15).

**A.  Summary Judgment Standard**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The moving party is entitled to summary judgment when, viewing the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  While the moving party does not have to disprove matters on which the opponent will bear the burden of proof at trial, they nonetheless bear the burden of producing evidence that negates an essential element of the opposing party's claim and the ultimate burden of persuading the court that no genuine issue of material fact exists. *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000).  When the nonmoving party has the burden of proof at trial, the moving party need only point out that there is an absence of evidence to support the nonmoving party's case. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

Once the moving party has carried its burden, the opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the opposing party must come forward with specific facts showing that there is a genuine issue for trial. *Id*.

Although a summary judgment motion is to be granted with caution, it is not a disfavored remedy: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of

every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)(citations and quotations omitted).

### B. Washington Consumer Protection Act Claim

A claim under the Washington Consumer Protection Act, RCW 19.86.010 et seq., requires a plaintiff to establish five elements: 1) an unfair or deceptive act or practice; 2) in trade or commerce; 3) which affects the public interest; 4) injury to plaintiff in his business or property; and 5) a causal link between the act complained of and the injury suffered. *Hangman Ridge v. Safeco Title*, 105 Wash.2d 778, 784-85 (1986). Defendant argues Plaintiff cannot establish an unfair or deceptive act, or the public interest element.

The WCPA was enacted "to protect the public and foster fair and honest competition". *Id*. at 784 citing RCW 19.86.920. The Washington legislature declared its intent that the act "shall be liberally construed that its beneficial purposes may be served." RCW 19.86.920. Plaintiff argues it is not required that the court find Plaintiff had a contractual relationship with Defendant in order to sustain a claim under the WCPA. Plaintiff is correct. The Washington Supreme Court has held a private action under the WCPA "may be brought by one who is not in a consumer or other business relationship with the actor against whom the suit is brought." *Panag v. Farmers Ins.Co*., 166 Wash.2d 27, 43 (2009).

Plaintiff argues Primo representatives made misrepresentations that were unfair and anti-competitive. Plaintiff claims it was promised a long-term relationship with Primo, and Primo failed to disclose its on-going negotiations with D.S. Waters to enter into a national distribution deal. Plaintiff contends it was induced by the promise of a long-term relationship with Primo to undertake expenses and modification of its facilities, and was damaged when Primo ended the relationship. The allegation that misrepresentations were made is supported by the Declaration of James Connelly and the Declaration of Ross Rossette. The argument that it was the intent of the parties for Plaintiff to become a Regional Operator ("RO") of Primo is also supported by some documentary evidence. The January 5, 2014, letter from Primo to Plaintiff referred to

ORDER - 5

Lodi Water alternatively as a "Regional Operator". (ECF No.32-3). Primo offered Plaintiff $6,000 as a "transition incentive" and attached an addendum to the letter outlining incentives offered to Regional Operators. (ECF No. 32-3, Ex. A).

As to the contested element of public interest impact, Plaintiff argues Primo's conduct had the potential for repetition and Primo terminated its agreements with many other local and regional distributors. The fact Primo terminated its agreements with about 60 different entities when it entered into the national distribution agreement with DS Waters is supported by Defendant's own Statement of Facts. (ECF No. 30, ¶ 15-16). The Declaration of Ross Rosette also establishes that H2Oregon's contract was terminated in January 2014. (ECF No. 37). Although termination of these other agreements does not establish wrongdoing, it is supportive of the broader impact of Defendant's actions. Defendant relies on a statement from the Washington Supreme Court that: "Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest." *Hangman Ridge v. Safeco Title*, 105 Wash.2d 778, 790 (1986). But, the following sentence from that opinion reads: "However, it is the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion that changes a factual pattern from a private dispute to one that affects the public interest." *Id.* The court does not find, at this juncture, that Plaintiff has established an impact on the public interest, nor does the court find Defendant has established its right to summary judgement on the WCPA claim.

Defendant's Motion as to the claim for violation of the WCPA is **DENIED**.

**C. Breach of Contract Claim**

The alleged contract on which Plaintiff relies is entitled "Primo Sub-Distributor Agreement" and states it is between "Lodi Water Company, Jim Connelly and Primo Regional Operator (RO) H2Oregon Water Company." It is signed by James Connelly for Lodi and by Ross Rosette on behalf of H2Oregon. (Ex. A to Complaint at ECF No. 1) It is not by expressed terms an agreement between Connelly/Lodi and Defendant Primo Water. Mr. Connelly admits he did not understand this document to be the long term

ORDER - 6

contract between Plaintiff and Primo Water, but rather it was a "temporary document". (Dec. of James Connelly, ECF No. 38, ¶ 7). Mr. Connelly states he had "reservations" about signing the document but was assured by Bob Heer, of Primo Water, that a "complete RO Contract would be forthcoming". (*Id.* at ¶ 8). That complete RO Contract apparently never materialized, and thus there is no written contract between Primo and Plaintiff upon which to base a breach of contract claim. Defendant's Motion for Summary Judgment as to the breach of an expressed contract claim is **GRANTED**.

### D. Fraudulent Inducement

It is unclear from the Complaint that Plaintiff sought to assert a fraud claim separate and apart from the contentions of misrepresentation that underlie the breach of contract and WCPA claims. Fraud claims must be pled with particularity. *Lopez v. Federal Housing Finance Agency*, 578 Fed.Appx. 701 (9th Cir. 2014)("The district court properly dismissed Plaintiffs' fraud in the inducement claims for failure to plead fraud with particularity. See Fed.R.Civ.P. 9(b)"). Although it is unclear whether Plaintiff intended to assert a fraud claim, the parties do contest its existence in the briefing. Plaintiff incorrectly argues there are five elements in such a claim. (ECF No. 39, p. 12). Washington courts, when evaluating claims of fraudulent inducement, look to the nine elements of fraud. See *Frontier Bank v. Bingo Investments*, LLC, 361 P.3d 230, 238 (2015); *Geary v. ING Bank*, 182 Wash.App. 1031 (2014). Each element of a fraud claim must be established by "clear, cogent and convincing evidence." *Stiley v. Block*, 130 Wash.2d 486, 505 (1996). Plaintiff's brief states: "(1) That representation was made by defendant or with his authority (Bob Heer); (2) that it related to a material fact (bottling and distribution of bottled water products); (3) that it was false and wherein it was false (PRIMO ; (4) that the plaintiff ..." (ECF No. 39, p. 12). Plaintiff's brief fails to set forth how the statement was allegedly false. Plaintiff made this exact same omission at para. 19.1 of the Complaint, "(3) that it was false and wherein it was false (PRIMO ;".

Plaintiff did not adequately plead fraud, convincingly argue fraud in its briefing, or set forth sufficient evidence of fraud in the record. The court **GRANTS** Defendant's

ORDER - 7

Motion for Summary Judgment as to Plaintiff's claim of fraudulent inducement.

### E.  Equitable Theories

Plaintiff alleges it is entitled to recover against Primo Water based on the equitable theories of unjust enrichment, equitable estoppel, detrimental reliance, and quantum meruit.  Defendant's Motion does not address those claims at length.  Rather Defendant argues that where there is an express valid contract, the law will not imply a contract or allow a claim for unjust enrichment in contravention of express contract terms. (ECF No. 29, p. 8).  Defendant's argument is there is no express valid contract between Primo and Connelly. The court has, *supra*, granted summary judgment on the breach of contract claim.  However, the lack of a written contract does not preclude Connelly from asserting equitable theories of recovery.

"Unjust enrichment is the method of recovery for the value of the benefit retained **absent any contractual relationship** because notions of fairness and justice require it." *Young v. Young*, 164 Wash.2d 477, 484 (2008)(emphasis added).  Three elements are required to establish a claim of unjust enrichment: 1) a benefit conferred upon the defendant by the plaintiff; 2) an appreciation or knowledge by defendant of the benefit; and 3) acceptance or retention of the benefit under circumstances which make such inequitable. *Id*.  *Quantum meruit* is the method of recovering the reasonable value of services under an implied in fact contract. *Id*.

Equitable estoppel is based on the principle that "a party should be held to a representation made or position assumed where inequitable consequences would otherwise result to another party who has justifiably and in good faith relied thereon." *Kramarevcky v. Dept. of Social and Health Services*, 122 Wash.2d 738, 743 (1993). To establish an injury for equitable estoppel purposes, "a party must establish he or she justifiably relied to his or her detriment on the words or conduct of another." *Id*. at 747. Under Washington law, "injury, prejudice and detrimental reliance have been used interchangeably to express the requirement that a party asserting equitable estoppel must show a detrimental change of position." *Id*.  Equitable estoppel is not a favored theory of

recovery, "and a party asserting it must prove each of its elements by clear, cogent, and convincing evidence." *Cornerstone Equip. Leasing v. MacLeod*, 159 Wash.App. 899, 907 (2011).

The court finds Defendant has not established a right to summary judgment on these equitable claims of recovery. Accordingly, Defendant's Motion as to Plaintiff's theories of unjust enrichment/quantum meruit and equitable estoppel/detrimental reliance is **DENIED**.

**IV. Conclusion**

Defendant is entitled to summary judgment on the claim of breach of the written contract that was attached to Plaintiff's Complaint entitled, "Primo Sub-Distributor Agreement" and on the claim of fraudulent inducement. Defendant's Motion for Summary Judgment is denied as to Plaintiff's equitable theories of recovery and on the WCPA claim. The parties are encouraged to discuss resolution of this matter. See Local Rule 16.2. ("The Court encourages the attorneys for all parties to the action, except nominal parties, to meet at least once and engage in a good faith attempt to negotiate a settlement of the action.").

This matter was removed to federal court on the basis of Defendant's assertion in the Notice of Removal that the amount in controversy was $77,000. (ECF No. 1, p. 4). Plaintiff did not move to remand, but several months after removal stated in a discovery-related filing, "Defendant grossly overstated the case when removing the case to Federal Court by broadly stating for diversity purposes that the claims exceed $75,000" (ECF No. 14, p. 3). When Primo notified Plaintiff of its entry into a national distribution deal, it offered Plaintiff $6,000 as a "transition incentive". (ECF No. 32-3). Plaintiff responded: "We are moving in the right direction! $6000 USD is fair to compensate Lodi for the 60 days left on the original agreement ..." (ECF No. 32-4). However, Plaintiff also contended that the issue of its "upfront costs" remained, and it needed to be reimbursed. Plaintiff attached an itemization of $32,540 in claimed expenses. (ECF No. 32-4). Thus it appears that prefiling, this matter could have been resolved for substantially less than

ORDER - 9

the $75,000 amount in controversy requirement.  Now the parties have spent over 1 year in federal litigation, and the matter remains unresolved.  It appears to the court it is in the parties' best interests that they meet and confer in good faith in an attempt to resolve this matter before incurring the additional expenditure of time and money involved in a trial.  The court's Magistrate Judge is often used as a settlement mediator upon proper and prompt request.  However, the Magistrate Judge's time for such use is limited and available only on a timely request.

**IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment (ECF No. 29) is **GRANTED IN PART and DENIED IN PART** as set forth herein**.**

2. This matter remains set for trial on June 6, 2016.

**IT IS SO ORDERED**.  The Clerk shall file this Order and furnish copies to counsel.

Dated this 19th day of January, 2016.

s/ Justin L. Quackenbush<br>JUSTIN L. QUACKENBUSH<br>SENIOR UNITED STATES DISTRICT JUDGE